**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| MARIA GONZALEZ, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:15-CV-290-PPS-MGG |
| | ) | |
| ADT, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

On May 31, 2018, Plaintiffs filed their Motion for Default Judgment Pursuant to

Rule 37 and Request for Other Discovery Sanctions. On July 5, 2018, Defendant, ADT,

LLC ("ADT"), filed its response in opposition to Plaintiffs' motion. The motion became

ripe on July 12, 2018, when Plaintiffs filed their reply brief.

Also pending and ripe before the Court is Plaintiffs' Motion to File Pleadings

Under Seal filed on the same day as the motion for default judgment. Through the

motion to seal, Plaintiffs ask the Court to maintain their motion, memorandum in

support, and all attached exhibits under seal out of deference to Defendant's

designations of confidential information consistent with the Court's Stipulated

Protective Order. On November 2, 2018, Defendant filed a response to Plaintiffs' motion

to seal in compliance with this Court's order dated October 22, 2018.

On June 7, 2018, Plaintiffs' motion for default judgment and motion to seal were

referred to the undersigned for a report and recommendation pursuant to 28 U.S.C.

§ 636(b). For the reasons discussed below, the Court grants Plaintiffs' motion to seal and denies their motion for default judgment.

## I.    RELEVANT BACKGROUND

Plaintiffs initiated this lawsuit as the result of a criminal intrusion into Plaintiffs' home on June 10, 2013. Plaintiffs were both assaulted and robbed during the incident. Plaintiffs believed that their home was secured by an ADT alarm system at the time. However, Plaintiffs' system was not working because they no longer had a landline telephone to which the system could connect.

ADT, LLC, is the only remaining defendant in this case that has been litigated for almost three and a half years. Plaintiffs' only remaining claim is for ADT's alleged negligence in installing, testing, and monitoring Plaintiffs' alarm system. Throughout, the parties have disagreed about the scope of discovery and have sought the Court's assistance in resolving their discovery disputes.

### A.    June 22, 2017, Order [DE 76]

Discovery began in earnest in this case in the late 2016 into early 2017. In response to ADT's objections to Plaintiffs' discovery requests as overbroad, motions to compel and for protective orders were filed. After a motion hearing, the undersigned issued an order on June 22, 2017, denying Plaintiffs' motion to compel responses to interrogatories and requests for production, which were deemed overbroad. The undersigned explicitly noted that "Plaintiffs' [discovery] requests amount to a fishing expedition attempting to uncover any and every possible issue that may be in the case, instead of focusing in on the issues present." [DE 76 at 8]. The undersigned also stated

2

that Plaintiffs' discovery requests sought "information that requires creation of documents not already in existence, . . . vast quantities of information greatly disproportionate to the needs of the case, or . . . information that is not within the control or custody of ADT." [DE 76 at 9]. The parties reached agreement about other outstanding issues at the hearing such that the remainder of the undersigned's order only required documentation of that agreement. At that time, no costs were awarded to either party under Fed. R. Civ. P. 37(a)(5) based on a finding of "fault in both parties for the discovery disputes [the Court was] required to resolve." [DE 76 at 14].

Afterward, discovery continued including Plaintiffs' depositions of ADT employees involved with Plaintiffs' system, including Sales Representative Eric Hardisty on September 13, 2017, Technician Shannon Marrs on September 14, 2017, and Installer Merle Ramsey[1] on October 10, 2017. In the mean time, ADT's expert was deposed on October 3, 2017. Outside the depositions, ADT also continued to object to parts of even Plaintiffs' amended discovery requests leading to a second round of motions to compel and for protective orders.

### B.    January 10, 2018, Order

Following a motion hearing on December 20, 2017, the undersigned issued a second discovery order on January 10, 2018. Among the discussions at the December 2017 hearing was the following exchange between the undersigned and ADT's counsel about the extent of supplemental production of documents.

---

[1] Ramsey was only deposed after Plaintiffs learned in the deposition of Hardisty, Marrs, and ADT Installer William James White that White did not install Plaintiffs' alarm system, but Ramsey did.

3

THE COURT:  The billing record that you provided in September [2017], that additional documentation, is that the complete documentation of all of the event history, the screenshots, the work orders, and billing records you have? I mean, that completes the universe?

[ADT's COUNSEL]:  Your Honor, my understanding, that's the universe of what we've got for Ms. Gonzalez's account.

THE COURT:  So that's the global universe of all the data that you have, and so that supplementation that you made in September satisfied the requirement to provide all documents that you had in your possessing regarding that information?

[ADT's COUNSEL]:  For Ms. Gonzalez's account, yes, Your Honor, yes.

. . . .

[ADT's COUNSEL]:  Absolutely, and I guess we'd be happy to amend our responses to reflect, if there's a concern about an objection. . . . [W]ith regarding to Ms. Gonzalez's system, yeah, Your Honor, the universe is out there.

. . . .

THE COURT:  So, make a note, . . . . You're going to certify to [Plaintiffs] that all of the information that has already been provided is the global information that you have with regard to Ms. Gonzalez's account.

[DE 115 at 29–30]. In the January 2018 Order, the undersigned then clarified further the scope of discovery in addition to affirming further agreements between the parties confirmed at the hearing.

The scope of discovery had already been defined in the June 2017 Order as consistent with Plaintiffs' sole remaining claim, which the undersigned identified as "ADT's alleged negligence in installing, testing, and monitoring of Plaintiffs' alarm system" as Plaintiffs' sole remaining claim. [DE 76 at 2]. In the January 2018 Order, however, the undersigned found that "Plaintiffs still [sought] a broader range of

information from ADT than is relevant and proportional to the claims and defenses in this case despite their efforts [since the Court's previous order] to narrow the scope of their requests." [DE 107 at 2]. In the same order, the undersigned also chided ADT for withholding information responsive to Plaintiffs' amended discovery requests based on its "mistaken belief that information relevant to Plaintiffs' dismissed claims cannot be relevant to any other aspect of this case." [DE 107 at 2].

Finding that both parties misunderstood the scope of discovery, the undersigned clarified that "[c]ontract formation is relevant to Plaintiffs' negligence claim [and therefore] Plaintiffs are entitled to information regarding ADT employee knowledge—especially salesperson Eric Hardisty's knowledge—when designing Plaintiffs' alarm system as part of the sales process." [DE 107 at 2]. The undersigned also specified that "the full range of ADT services and equipment made available to Plaintiffs during the sales process and upon which they could have chosen their alarm system" was relevant to the contract formation issue. [DE 107 at 3].

Having defined the scope of discovery, the undersigned then required ADT to

(1) . . . produce materials that its employees connected in any way to Plaintiffs' system or account, including Eric Hardisty, claim were provided to them as part of their training. . . . (2) . . . produce [documents related to contract formation], including but not limited to the 'Price List' referenced in Hardisty's deposition, if it exists, and any brochures Hardisty gave to Plaintiffs during the sales and design process. . . .

[DE 107 at 2–3]. The undersigned also memorialized ADT's agreement at the December 2017 hearing to "(a) supplement its response to . . . to reflect all ADT employees involved in any way with Plaintiffs' account; and (b) certify that the documents already

produced . . . include all Central Station documents and documentation of all services related to Plaintiffs' account." [DE 107 at 3]. ADT was ordered to produce these discovery responses as well as a Rule 30(b)(6) witness for deposition by February 28, 2018. The undersigned then extended the discovery deadline—emphasizing that it was the final time an extension would be considered—until May 28, 2018. Notably, the undersigned invoked Fed. R. Civ. P. 1 and chastised both parties once again for their mutual failure "to work together effectively [consuming] more than their fair share of the Court's resources on discovery matters typically handled directly by the parties during litigation." [DE 107 at 4].

### C.    Discovery Efforts after the January 2018 Court Order

On February 28, 2018, and March 2, 2018, ADT served supplemental discovery responses that included either responsive documents, qualified by objections based on relevance and proportionality, or certification that they had already produced all responsive documents. After learning from Plaintiffs that one of the documents included an incomplete screenshot from its MasterMind customer database, ADT produced expanded screenshots on March 5, 2018. One of the expanded screenshots ("the Haynes Screenshot") showed notes from Customer Service Representative Susan Haynes who had spoken with Plaintiff Maria Gonzalez on June 21, 2013, and noted: "Maria Gonzalez was advised that per ADT's Police [sic] since both ADT and the customer are responsible to verify the alarm is communicating, ADT will only reimburse her for . . . half the time her alarm was not communicating." [DE 188-27 at 5].

6

Plaintiffs then deposed ADT's Rule 30(b)(6) Corporate Representatives, Brian VerPlank and Robert Taylor, on March 7 and 8, 2018[2]. VerPlank could not testify about ADT's policies, procedures, and training related to its sales representatives and installation technicians or ADT's Team Member Handbook, produced in the supplemental production. He deferred to Taylor on installer training and referred Plaintiffs to ADT's Chief Human Resources Officer, Amelia Pulliam, for the Handbook information. Taylor, however, testified that he could only speak generally about installer training and referred Plaintiffs to Charles Fisher, ADT's head of the Field Services Organization department. Fisher was then deposed in Dallas on May 24, 2018. Plaintiffs also asked to depose Pulliam, but ADT refused to produce her.

On April 6, 2018, Plaintiffs served ADT with a Request to Inspect and their Third Set of Requests for Production. Plaintiffs' Request to Inspect sought to address their concern that they had still not received complete information from ADT despite the Court's order. Therefore, Plaintiffs asked to inspect the MasterMind database for information related to their account and ADT's intranet repository for standard operating procedures.

Before responding to these new requests, however, ADT supplemented account-related documents in the form of accounts receivable information on April 25, 2018. Additionally, Plaintiffs deposed Customer Service Representative Haynes on April 27,

---

[2] The parties agreed to hold the Rule 30(b)(6) depositions after the Court's February 28, 2018, deadline so that Plaintiffs could review ADT's Supplemental Responses, timely served on February 28, 2018, before deposing ADT's Corporate Representatives.

2018. On May 7, 2018, ADT then timely objected to Plaintiffs' inspection request but

produced documents not previously produced in response to the Third Set of Requests

for Production, including:

> (1) "Notice of Cancellation of Residential Services Contract" form and a waiver form related to Plaintiffs' contract;

> (2) MasterMind notes documenting changes to Plaintiffs' account in 2016—after this case was initiated—by two employees not previously named as having touched Plaintiffs' account;

> (3) notes from ADT's billing system, including notes from January 2012 regarding a phone call from Gonzalez about her rate in light of her landline;

> (4) MasterMind screenshots showing June 2012 and "ADD CELL [phone]" entry;

> (5) system notes from Customer Service Representative Haynes;

> (6) policies and standard operating procedures;

> (7) training materials including: (a) "Tyco's Guide to Ethical Conduct" mentioned for the first time in the March 2018 depositions of VerPlank and Taylor, inquired about at the May 2018 Fisher deposition, but still never discussed in full by any ADT representative; and (b) "The Model Installation: A Royal Blue Treatment Installation Guide to Excellence;

> (8) MasterMind Disposition Codes and Customer Database Profile Codes, useful in interpreting MasterMind and contract documents; and

> (9) complete employee files of Sales Representative Hardisty and Installer Ramsey, included information regarding a 2011 disciplinary action against Hardisty for lying about customer interactions and his whereabouts. related to Plaintiffs' account not previously produced.

Lastly, ADT provided additional supplementation of account-related information on

May 16, 2018, which included three billing invoices that had been paid.

Discovery closed on May 28, 2018. Plaintiffs filed the instant motion for default

judgment or other discovery sanctions on May 31, 2018.

### D.    Plaintiffs' Motion for Default Judgment

Through their motion, Plaintiffs ask the Court to enter default judgment against ADT as a Rule 37 sanction for its willful, bad faith, or grossly negligent efforts to delay and obstruct the course of discovery. Alleging a "litigation by attrition" strategy, Plaintiffs specifically contend that: (1) ADT's counsel intentionally misrepresented the completeness of its discovery production to the undersigned at the December 2017 hearing; (2) falsely certified that its supplemental production on February 28, 2018, was complete; (3) failed to produce all the discoverable documents available to it by the Court imposed deadline of February 28, 2018; (4) withheld information available to it until May 7, 2018; and (5) failed to prepare its Rule 30(b)(6) Corporate Representatives adequately for their depositions. Plaintiffs also ask the Court to sanction ADT by ordering it to pay their attorney fees and costs associated with the Dallas deposition of Charles Fisher and with the instant motion. Should the Court determine that this behavior does not justify default judgment, Plaintiffs alternatively ask the Court to (1) reopen discovery so Plaintiffs can address matters arising from ADT's alleged discovery failures; (2) compel ADT to comply fully with their Request for Inspection; (3) compel ADT to produce Sales Representative Hardisty, Installer Ramsey, and additional Rule 30(b)(6) Corporate Representatives for continued depositions; and (4) certain facts arising from the Haynes Screenshot be designated as facts.

In its defense, ADT contends that it ultimately decided to produce everything Plaintiffs requested to end the ongoing dispute despite their continued objections as to relevance and proportionality based on the Court's June 2017 and January 2018 orders

defining the scope of discovery. ADT also argues that only five of the documents produced after February 28, 2018, could have been produced before that Court-ordered deadline because the rest of the information was either responsive to Plaintiffs' Third Request for Production not served until April 6, 2018, or is irrelevant despite its production based on the Court's Orders.

ADT further argues that the drastic sanction of default judgment is not warranted because Plaintiffs have not established any prejudice, willfulness, bad faith, or other extreme factor required to impose the sanction. Moreover, ADT directs the Court's attention to Plaintiffs' own delay in seeking discovery process as well as their extensive depositions of multiple fact, expert, and 30(b)(6) witnesses to support its allegation that the instant motion is just a ploy by Plaintiffs to get discovery re-opened to inspect ADT's computer systems.

## II.   ANALYSIS

### A.   Motion to Seal

Plaintiffs filed the instant motion to seal documents related to the instant motion for default judgment out of deference to ADT's confidentiality designations. In its response, Defendant contends that five exhibits need to be sealed in their entirety because they include proprietary and commercially valuable information or the protectable personal information of its employees or customers. Additionally, ADT asks the Court to redact significant portions of two deposition transcripts attached as exhibits, which include discussion of similar confidential proprietary information that implicates trade secrets and customer safety.

10

Through its response, Defendant has demonstrated the good cause necessary to maintain the five exhibits under seal and to redact the other two exhibits. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999). Therefore, the undersigned **RECOMMENDS** that Plaintiff's motion to seal [DE 117] be **GRANTED IN PART,** as to Exhibits 10 and 12–15 [DE 118-10, DE 118-12 through DE 118-20] and portions of Exhibits 17 and 18 [DE 118-23 and DE 118-24] as identified in Defendant's response [DE 136 at 8], and **DENIED IN PART** as to Plaintiffs' motion for default judgment [DE 118], their accompanying memorandum of support [DE 119] and Exhibits 1–9, 11, 16–25 [DE 118-1 through DE 118-9, DE 118-11, DE 118-21 through DE 118-31].

### B.    Rule 37 Motion for Default Judgment

#### 1.    Legal Standard

"If a party . . . fails to obey an order to provide or permit discovery . . . , the court where the action is pending may issue further just orders [including] dismissing the action or proceedings in whole or in part [or] rendering a default judgment against the disobedient party . . . ." Fed. R. Civ. P. 37(b)(2)(v)–(vi). Similarly, sanctions including default judgment are warranted when "a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i), (3). "[A] default judgment may be awarded if it is a sanction proportional to the discovery failure." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383 (7th Cir. 1993); *see also Maynard v. Nygren*, 332 F.3d 462, 467–68 (7th Cir. 2003). Default judgment is proportional "when there are willful or bad faith violations

of discovery orders[,] a pattern of contumacious conduct or dilatory tactics or the failure of less drastic sanctions." *Id.* Fault, defined as "extraordinarily poor judgment" or "gross negligence" rather than "mistake or carelessness" regardless of intent, can also support default judgment as a sanction. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *see also United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, 271 F.R.D. 487, 502 (N.D. Ind. 2010).

Yet courts only impose default judgment, or dismissal, as a Rule 37 sanction in "extreme situations." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (quoting *GCIU Emp'r Ret. Fund v. Chi. Tribune Co.*, 8 F.3d 1195, 1199 (7th Cir. 1993) ("The drastic nature of a dismissal with prejudice requires the action to be used only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable."). Dismissal is the "ultimate" sanction "reserved for cases in which the offending party has demonstrated willfulness, bad faith, or fault." *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000); *see also 360 Insight, Inc. v. Spamhaus Project*, 685 F.3d 637, 642 (7th Cir. 2011). Therefore, "before dismissing a case, the Court considers and explains why lesser sanctions would be inappropriate because sanctions must be proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, Cause No. 3:09-CV-493-JD, 2013WL 4950802, at *3 (N.D. Ind. Sept. 10, 2013) citing *Maynard,* 332 F.3d 462 at 468.

Here, Plaintiffs argue that sanctions, in the form of default judgment, are appropriate based on ADT's alleged misrepresentations to the Court at the December

2017 hearing and in its February 2018 certifications of production; its alleged violations of the Court's January 2018 Order; and its overall discovery strategy of "litigation by attrition" whereby ADT allegedly withheld relevant information until a Court order mandated production or until the close of discovery was imminent.

### 2.    Misrepresentation

Plaintiffs correctly draw attention to the fact that at the December 20, 2017, hearing, ADT's counsel explicitly told this Court that ADT had already produced the "global universe" of information related to Plaintiffs' account. And interestingly, ADT produced more information related to Plaintiffs' account in February, March, April, and May 2018 as part of the extended discovery process. Thus, Plaintiffs understandably question the integrity and intention of ADT's counsel at the December 2017. Yet, Plaintiffs' briefing of the instant motion provides the Court with nothing to establish that ADT willfully lied to the Court. Indeed, review of all the circumstances suggests an effort by ADT to ensure that the global universe of Plaintiffs' account information was indeed produced.

First, the Court's January 2018 Order further defined the scope of discovery in this case. As a result, it would be reasonable for all parties, including ADT, to review their production up until that point and then supplement their discovery responses to ensure they were consistent with the Court's recent order. In fact, ADT's counsel could very well have been remiss in their professional obligations had they failed to suggest such a review for supplemental production.

Second, ADT has consistently objected to Plaintiffs' discovery requests as

overbroad. ADT's objections were proven justified, at least in part, in both the June 2017 and January 2018 Orders as the Court found that Plaintiffs' discovery requests exceeded the scope of discovery. Yet ADT decided, in the course of discovery after the Court's January 2018 Order, to produce information that it still believed to be either irrelevant or disproportional to the needs of this case, based on the Court's orders, in order to eliminate any further discovery disputes and to keep the case moving toward resolution. Plaintiffs may doubt the sincerity of ADT's stated intention for this shift in discovery strategy. However, the inference Plaintiffs ask the Court to make—that ADT's production after the December 2017 shows intentional misrepresentation—is not supported by the facts in the record before the Court.

Similarly, Plaintiffs' allegation ADT intentionally lied about the extent of its production in its February 28, 2018, certification is unsupported by facts in the record. The record does show that ADT produced information related to Plaintiffs' account after February 28, 2018, as stated above. However, the parties' duty to supplement production remains all the way through trial. As such, a subsequent production in and of itself is not evidence of intentional misrepresentation. Moreover, ADT's supplementation could reflect its shift in production strategy to accommodate Plaintiffs. And furthermore, much of the new information ADT produced in May 2018 was in direct response to Plaintiffs' Third Request for Production that was not served until April 6, 2018—about six weeks after the certification was timely served on February 28, 2018. Even if Plaintiffs' Third Request for Production only duplicated previous responses or sought information revealed in the March 30(b)(6) depositions

14

that was available to ADT before February 28, 2018, nothing precluded ADT, or Plaintiffs for that matter, from withholding information outside the scope of discovery defined by the Court. Indeed, Rule 26(b)(1) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." And ADT's decision to produce more information does not automatically establish that all the produced information is indeed relevant to the claims and defenses in this case.

In the end, the record definitively shows that ADT produced information related to Plaintiffs' account after its counsel told the Court explicitly that the global universe of documents had been produced and after it certified that all such documents had been produced. However, the record does not establish any willfulness, bad faith, or fault in the supplemental productions. Rather, the record reflects a good faith effort to supplement and to provide Plaintiffs with all information that was potentially relevant to their claims. As a result, Plaintiffs' request for sanctions based solely on alleged misrepresentation is misplaced.

### 3.     Violation of January 2018 Order

Plaintiffs also argue that ADT directly violated the Court's January 2018 Order by producing information related to Plaintiffs' account after the February 28, 2018, deadline and by failing to timely produce Rule 30(b)(6) witnesses who were prepared to testify on the full range of topics noticed. Plaintiffs fail to identify any willfulness, bad faith, or fault as to ADT's arguably tardy production of documents related to their account for the same reasons already discussed.

More concerning, however, is ADT's failure to produce Rule 30(b)(6) witnesses that could completely testify as to the noticed topics. Not only were VerPlank and Taylor unable to answer all of Plaintiffs' questions during their March 2018 depositions, Fisher was not able to answer the remaining questions during his deposition at the end of May. Yet once again, the question of relevance rears its head.

Fisher was designated as a supplemental Rule 30(b)(6) witness to testify solely as to the issue of residential installation technician training in 2010 after VerPlank and Taylor could not adequately respond to Plaintiffs' questions on the topic. He testified about the installer training on May 24, 2018, which also included testimony about the "Royal Blue" training document produced by ADT on May 7, 2018. However, Fisher was not prepared to answer questions about the "Tyco Guide to Ethical Conduct" that ADT also produced on May 7, 2018. The "Tyco Guide" addresses general employment issues such as positive work place, diversity and inclusion, harassment policies, conflicts of interest, media relations, and more. While any installer would have likely gone through this training, the Tyco topics do not relate to Plaintiffs' claims related to ADT's sale, installation, and monitoring of their alarm system, contract formation, or the full range of services and equipment made available to Plaintiffs at the time of the sale—the scope of relevant discovery defined in the June 2017 and January 2018 Orders.

Of course, ADT would be within its right to withhold documents and deposition testimony on grounds of relevance and proportionality. As a result, what appears on the surface to be a failure to comply with the Court's order to produce a

16

Rule 30(b)(6) turns out to be a reasonable approach to discovery requests beyond the scope as defined by the Court.

### 4.    Pattern of Discovery Misconduct

Plaintiffs further argue that ADT's alleged misrepresentations and conduct in response to the Court's January 2018 Order are just part of a pattern of discovery misconduct throughout this entire case. When assessing the need for sanctions, especially dramatic sanctions like default judgment, the court must review the entire procedural history of the case to weigh more than just a single incident but all the alleged misconduct during the course of the lawsuit. *e360 Insight, Inc.*, 658 F.3d at 643. Plaintiffs also blame ADT for both contentious rounds of discovery motions that culminated in two hearings followed by the June 2017 and January 2018 Orders. Plaintiffs' accusations do not accurately reflect the undersigned's conclusions about what led to these discovery disputes.

In both orders, the undersigned found that Plaintiffs had failed to narrow the scope of their discovery requests sufficiently. Moreover, the undersigned found fault in both parties for their discovery disputes [DE 76 at 14] and chastised them for their mutual failure "to work together effectively [consuming] more than their fair share of the Court's resources on discovery matters typically handled directly by the parties during litigation" [DE 107 at 4]. ADT initially perceived the scope of discovery too narrowly while Plaintiffs perceived it too broadly. However, the undersigned's first round of direction in the June 2017 Order did not resolve the parties' misinterpretation of the scope of discovery. As a result, the undersigned had to clarify the scope of

discovery further in the January 2018 Order.

ADT's role in the long and contentious path of discovery in this case should not be underestimated. However, Plaintiffs' role should not be underestimated either. After all, ADT has now produced substantial information that may not even be relevant under the Court's definition. At the same time, Plaintiffs continue to cling stubbornly to their overbroad definition of the scope of discovery as evidenced by their contentions of prejudice resulting from ADT's approach to discovery and by the discovery they seek as alternative sanctions should the Court refuse to enter default judgment.

Plaintiffs argue that they were severely prejudiced by ADT's late production of information, which prevented them from questioning fact witnesses, including Sales Representative Hardisty and Installer Ramsey, as well as Rule 30(b)(6) witnesses about that information. ADT even admits that some information produced after the February 28, 2018, deadline could have been produced earlier, including the (1) Notice of Right to Cancel the alarm services contract executed by Plaintiffs in October 2010; (2) MasterMind screenshots of activity related to Plaintiffs' accounts after the June 2013 home invasion; (3) two documents describing two telephone calls from Maria Gonzalez to ADT's billing department in January 2012; (4) the complete MasterMind screenshot showing Customer Service Representative Haynes' full comment reporting on a phone call with Maria Gonzalez after the incident; and (5) three monthly billing invoices.

Despite Plaintiffs' argument to the contrary, not all of this tardy information is prejudicial. Indeed, some of it is not relevant to the sale, installation, and monitoring of Plaintiffs' alarm system until the home invasion occurred in June of 2013. The Notice of

Right to Cancel cannot be relevant because Plaintiffs did not timely execute their right to cancel. Similarly, the screenshots of post-incident activity on Plaintiffs' account cannot be relevant. Additionally, the parties all agree that the three billing invoices correctly reflect Plaintiffs' payments and do not offer any insight into the sale, installation, or monitoring of Plaintiffs' system.

However, the other two items are clearly relevant, and their delayed production could have caused some prejudice to Plaintiffs. The January 2012 accounts receivable notes show that Plaintiff Maria Gonzalez had called to get her billing rate reduced because she did not have cellular backup like her neighbor and that she subsequently called to confirm the new rate. This clearly relates to the monitoring of Plaintiffs' system before the incident. And Plaintiffs did not receive this information in time to discuss it at Maria Gonzalez's or any other fact witness's deposition.

ADT explains that the two notes did not get transferred to the MasterMind system when ADT changed its customer service software. ADT also notes that it collected information from the old system for the first time late in April 2018 as it was working on production responsive to Plaintiffs' Third Requests for Production. Review of the old system records revealed mostly documents duplicative of ADT's prior production. However, mixed in were the two January 2012 notes that ADT promptly produced. ADT admittedly offers no explanation why the old system was not investigated sooner. Without more, the undersigned is left to wonder why. Yet an inference of willfulness, bad faith, or fault is not logical as the two notes arguably would be favorable to ADT's defense. Moreover, Plaintiffs' counsel retains access to

Plaintiffs, especially Maria Gonzalez, to discuss it with her in preparation for an affidavit at the dispositive motion stage of litigation or for testimony at trial. Therefore, any substantive prejudice can be sufficiently mitigated.

The complete Haynes MasterMind screenshot also presents relevant information that would have been valuable to Plaintiffs earlier when they could have discussed it in additional depositions and could have focused their theories of liability as well as their discovery strategy more. Plaintiffs consider Haynes' statement, shown on the complete screenshot, that ADT and Gonzalez are both responsible to make sure the alarm is communicating with ADT an admission detrimental to ADT's defense. Again, Plaintiffs have not presented evidence showing willfulness, bad faith, or fault on the part of ADT in the delayed production of the complete Haynes screenshot. Indeed, the record shows that the gathering of the MasterMind screenshots was a tedious process of taking individual screenshots of every record in the system. Thus, it is reasonable that one or more screenshots might be inadvertently truncated in the process just as ADT contends. ADT quickly supplemented its production with the full screenshot as soon as it was made aware of the deficiency. ADT did so before VerPlank, Taylor, Fisher, and, most notably, Haynes were deposed. And Haynes would have been the person in the best position to offer further insight into the comment she authored. Therefore, any prejudice was minimized.

Aside from those five documents, ADT also produced (1) standard operating procedures regarding billing calls, updating premises phone numbers, and document storage and retention; (2) the Tyco Guide; (3) the "Royal Blue" manual; (4) MasterMind

Even History Disposition Codes; and (5) the complete employee files of Hardisty and Ramsey. Plaintiffs argue that time and resources could have been saved had ADT produced these sooner. They contend they could have eliminated ranges of questions at depositions and could have narrowed the scope of their discovery requests had they received this information sooner. Yet Plaintiffs have not established clear relevance of all this information. Instead, Plaintiffs appear to be conflating ADT's shift toward producing more discovery responses over their continuing objections with a concession of relevance.

As this Court has observed repeatedly, not all ADT policies and procedures are relevant to the sale, installation, and monitoring of her system. As discussed above, the Tyco Guide is not obviously relevant even though all ADT employees are bound by it. The "Royal Blue" Installation Manual is the most relevant of these documents as it might have played a role in the Ramsey's training before he installed Plaintiffs' system. Notably, however, the record is not clear as to whether Ramsey receiving this training before or after his interaction with Maria Gonzalez. Moreover, it was discussed by Fisher at his May 24, 2018, deposition mitigating any substantive prejudice. The MasterMind codes themselves are not directly relevant to Plaintiffs' claims. And the Hardisty and Ramsey employee files provide precious little, if any relevant information. For instance, Hardisty's file shows that he was written up in 2011 for failing to follow-up with a customer request for a sales appointment, but this issue arose after Hardisty interacted with Maria Gonzalez making it irrelevant. To the extent Hardisty's file reveals accusations of lying as Plaintiffs contend, it could be useful for the limited

21

purpose of impeachment, but this has no effect on the substantive matters in the claims before the Court.

Taken together, nothing in the record persuades the undersigned that ADT's conduct during discovery reflects any willfulness, bad faith, or fault. Therefore, default judgment is not appropriate. Moreover, without clarity as to the relevance of the "Royal Blue" manual, ADT's timing in giving the manual to Plaintiffs or producing Fisher to testify about it is not unreasonable. Therefore, any award of expenses and fees for the Fisher deposition is not warranted.

### 5.    Alternative Sanctions

Consistent with Fed. R. Civ. P. 1's mandate for the Court and parties to ensure a just outcome, the undersigned must also consider Plaintiffs' request for alternative sanctions. Specifically, Plaintiffs ask that the Court (1) reopen discovery to minimize alleged prejudice caused by ADT's delayed production; (2) compel ADT to allow inspection of its MasterMind customer database and standard operating procedures database to ensure complete production of all account-related documents; (3) compel continued depositions of Hardisty, Ramsey, and additional Rule 30(b)(6) depositions; (4) designate the statement in the complete Haynes screenshot as an admission of at least 50% fault on the part of ADT; and (5) award them costs and expenses for further discovery. None of Plaintiffs' instant requests are proportional to the current state of this case.

First, any substantive prejudice to Plaintiffs has been sufficiently mitigated either by production of information that exceeds the scope of discovery or by depositions,

especially that of Susan Haynes. Second, any prejudice in expenses and fees arising from the long, unnecessarily contentious discovery process is partially Plaintiffs' fault due to their unrelenting pursuit of discovery beyond the scope defined by this Court in its June 2017 and January 2018 Orders. Again, the undersigned reiterates that all parties have contributed to the discovery problems in this case and neither should be relieved of the obligations incurred as a result of that conduct.

Third, inspection of ADT's computer systems is disproportional to the needs of not only this case, but probably any case. Courts are cautioned against allowing a party direct access to electronically stored information and advised to consider more convenient, less burdensome and cheaper alternatives to ESI access to avoid encroachment on a party's privacy interests. Fed. R. Civ. P. 26, advisory committee notes; *see also Crabtree v. Angie's List, Inc.*, No. :16-cv-00877-SEB-MJD, 2017 WL 413242, at *3 (S.D. Ind. Jan. 31, 2017) (citing Fed. R. Civ. P. 34 advisory committee notes). Here, only Plaintiffs' unwarranted inference suggests that ADT's production of documents related to Plaintiffs' account is not complete. Additionally, Plaintiffs have not provided any evidence that the outdated, no longer functional standard operating procedures database they seek to inspect offers anything more than what ADT has already produced. Moreover, Plaintiffs have not demonstrated that the presumably large costs of such an inspection are justified.

Fourth, a designation of Haynes's alleged admission as fact is an unnecessarily harsh sanction when the record reflects nothing but an inadvertently incomplete production of the relevant screenshot, ADT promptly corrected the error, and Plaintiffs

possessed the full screenshot before deposing Haynes herself. Consequently, the proposed alternative sanctions are disproportional to ADT's conduct and the undersigned cannot recommend imposition of any of Plaintiffs' alternative sanctions.

### III.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that:

(1)    Plaintiffs' motion to seal [DE 117] be **GRANTED IN PART** and **DENIED IN PART** and that Plaintiffs be **ORDERED** to

   (a)    refile **UNSEALED** versions of their motion for default judgment [DE 118], accompanying memorandum in support [DE 119], and Exhibits 1–9, 11, 16–25 [DE 118-1 through DE 118-9, DE 118-11, DE 118-21 through DE 118-31];

   (b)    refile **SEALED** versions of their Exhibits 10, 12–15 [DE 118-10, DE 118-12 through DE 118-20]; and

   (c)    file **REDACTED** versions of Exhibits 17 and 18 [DE 118-23 through DE 118-24] as outlined in Defendant's response [DE 136 at 8].

(2)    Plaintiffs' Rule 37 motion for default judgment or alternative sanctions be **DENIED** [DE 118].

**NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 15th day of November, 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge