UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MARIA GONZALEZ, Individually and as the Natural Guardian of NELSON ROMERO, a Minor, and SALMA GONZALEZ, | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | No. 3:15CV290-PPS/MGG |
| ADT LLC, ADT SECURITY SERVICES, INC., ADT SECURITY SERVICES, LLC, ADT SECURITY SYSTEMS, INC., TYCO INTEGRATED SECURITY LLC, and ERIC HARDISTY, | ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

The tragic facts underlying this case involve a home invasion and brutal assault on plaintiffs Maria Gonzalez, her 10-year-old son Nelson Romero, and 16-year-old daughter Salma Gonzalez, who claim that ADT alarm company bears responsibility for the occurrence. ADT LLC, the sole remaining defendant, has filed two motions in limine seeking the exclusion of expert witnesses designated by the plaintiffs.

Under Fed.R.Evid. 702, witnesses qualified by "knowledge, skill, experience, training, or education" are sometimes able to offer opinion testimony. The four additional requirements for such testimony are that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

*Id*. Rule 703 broadens the permissible bases of an expert's opinion testimony: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."

**Dr. Sean Conrin, Psychiatrist**

ADT challenges the anticipated testimony of Sean Conrin, M.D., an assistant professor of psychiatry at University of Illinois Hospital at Chicago. Based on Dr. Conrin's review of factual material about the home invasion, as well as records of the plaintiffs' medical treatment afterward, Conrin's expert report expresses several opinions, including these. The events were traumatic and are associated with psychiatric consequences for all three plaintiffs. Maria developed post-traumatic stress disorder and major depressive disorder, which were linked to her subsequent suicide attempt. Salma also developed symptoms meeting the criteria for PTSD and major depressive disorder. A full assessment and diagnosis are not available for Nelson but severe negative impacts cannot be ruled out. All three plaintiffs are likely to "continue to be negatively impacted and require ongoing medical care." [DE 124-1 at 3; *see also* DE 124-1 at 7.]

ADT's challenge to Dr. Conrin's report centers on the undisputed fact that Dr. Conrin did not personally interview or evaluate the plaintiffs. ADT contends that this means Dr. Conrin's testimony "does not follow a discernable [sic] scientific methodology and is not the product of scientific analysis." [DE 124 at 4.] ADT has obtained the report of a licensed clinical psychologist, David N. Lombard, Ph.D., critiquing Dr. Conrin's report.[1] Lombard concludes that Conrin cannot ethically diagnose any of the plaintiffs without having performed his own independent evaluation, and notes that Conrin did not "interview the treating providers to confirm any of the data" relayed in their records. [DE 124-3 at 4.] With regard to Salma in particular, Lombard is critical of Conrin's conclusions that her symptoms are sufficiently severe to support diagnoses of PTSD and major depressive disorder, when her treating provider did not make those diagnoses. [*Id.*] ADT characterizes Conrin's report and opinions as failing to meet the standard of care for psychiatric evaluation, and therefore unreliable and inadmissible.

In response, plaintiffs argue that "ADT seeks to hold Dr. Conrin to the professional standards required for a diagnosing, treating psychologist in a clinical setting, as opposed to an independent medical examiner performing a medical records review." [DE 130 at 4.] Rather than for his own diagnoses, "Dr. Conrin was retained to provide his opinions with respect to the diagnoses of Major Depressive Disorder and

---

[1] Pages 8, 9 and 10 of Dr. Lombard's Consultation Report have been omitted from the exhibit filed at DE 124-3.

Post Traumatic Stress Disorder that were diagnosed by Plaintiffs' mental health providers, [and] to provide expert testimony regarding the nature, causes, and effects of these conditions." [*Id*. at 4-5.] Commentators observe that "[t]he main effect of Rule 703 is to permit experts to rely on evidence that would otherwise be excluded as inadmissible hearsay." The New Wigmore, A Treatise on Evidence: Expert Evidence, §4.6 (2d ed. 2018). "Doctors, for example, may rely on the reports of other medical professionals." *Id*. This is reflected in the Advisory Committee Notes for Rule 703, which consider a physician's diagnosis, relying on "information from numerous sources and of considerable variety" to be supported by "[h]is validation, expertly performed and subject to cross-examination," which "ought to suffice for judicial purposes." The Seventh Circuit has affirmed what the rules advisory notes and commentators have observed: "Medical professionals have long been expected to rely on the opinions of other medical professionals in forming their opinions." *Walker v. Soo Line R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000).

Dr. Conrin's deposition testimony expressed his awareness of the limits of his opinions. When asked if he is "ethically permitted to diagnose somebody with a disorder if you have not seen them in person," he responded, "No. But I can – not as an initial one. I can agree with others' diagnoses. I can review a case and have an opinion on it." [DE 124-2 at 4.] To that extent, I find Dr. Conrin's opinions about the psychiatric treatment history of the three plaintiffs following the home invasion to be reliable and admissible expert testimony under Rules 702 and 703. Dr. Conrin's report also contains

4

general material describing and explaining the conditions of PTSD and major depressive disorder, without specific reference to the plaintiffs. ADT does not challenge this portion of Dr. Conrin's report.

The aspect of Dr. Conrin's report that I find more troubling is his proffered opinion that all three plaintiffs should be expected to "continue to experience negative, and potentially long term, impacts on their health" and "require ongoing medical care." [DE 124-1 at 7, 3.] This opinion appears to be based in part on his expert knowledge of the "known impacts of similar trauma, in general" and "known research regarding long-term outcomes." [*Id*. at 3, 7.] But the basis for applying such a conclusion to these plaintiffs as patients is not provided in Dr. Conrin's report. First, Dr. Conrin does not indicate that any of the Gonzalez family's mental health treaters gave such a prognosis on which Conrin can rely.

Moreover, Dr. Conrin's report is dated October 29, 2016. [DE 124-1 at 2.] The family's mental health treatment he reviewed included counseling through January 16, 2014, and then, for Maria, further treatment after her suicide attempt in March 2014. [DE 124-1 at 4-5.] As he testified in his deposition in October 2017, Dr. Conrin was unaware of any psychiatric treatment of any of the plaintiffs after March 2014. [DE 129-1 at 8.] With this limited factual basis, I find Dr. Conrin's conclusion that the Gonzalez family would likely continue to suffer mental health consequences from the assault and require ongoing mental health treatment, potentially long-term into the future, to be based on insufficient facts and data. Such opinions are unreliable and inadmissible

under Rules 702 and 703. To that extent, ADT's motion to exclude Dr. Conrin's testimony will be granted. In all other respects, the motion will be denied.

**Jeffrey D. Zwirn, Alarm System Expert**

ADT also moves to exclude the opinions and testimony of Jeffrey Zwirn, the alarm system expert designated by the Gonzalezes. [DE 125.] The challenge is not to Zwirn's qualifications, but to the substance of his proffered testimony as expressed in his written report. ADT contends that Zwirn's report merely "parrot[s] Plaintiffs' version of the facts, advocate[s] for Plaintiffs and set[s] forth legal conclusions." [DE 125 at 23.]

Similar objections were raised by the plaintiffs against ADT's alarm expert, Louis Fiore. In my ruling from the bench at the April 12, 2018 hearing on that motion, I found that Fiore had adequate qualifications to testify as an expert concerning the residential alarm system at issue in this case, but that his report exceeded the bounds of admissible expert testimony when it offered statements of fact on disputed matters, based only on hearsay statements made to him by ADT personnel or representatives. [DE 114 at 32-34.]

Rule 703 expressly contemplates that an expert's testimony may be based on facts or data reasonably relied upon, even if the facts or data are not themselves admissible. Those facts and data, even if otherwise inadmissible, may be disclosed to the finder of fact as the basis for the expert's opinion. *See* Fed.R.Evid. 705 advisory committee's note. But the underlying information "relied upon by a qualified expert 'is

not admissible simply because the [expert's] opinion or inference is admitted.'" *Owens v. Republic of Sudan*, 864 F.3d 751, 789 (D.C.Cir. 2017), quoting Fed.R.Evid. 703 advisory committee's note.

In other words, a party is not permitted to "call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2nd Cir. 2013) (internal quotation marks and citation omitted), quoted in *Owens*, 864 F.3d at 789. Instead, the "way to adduce factual details of specific past events is, where possible, through persons who witnessed those events." *Marvel Characters*, 726 F.3d at 136. Allowing an expert to "parrot" testimonial hearsay is improper except when the expert is "conveying an independent judgment that *only incidentally discloses* the statement to assist the jury in evaluating the expert's opinion." *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012) (emphasis added). *See also United States v. Garcia*, 793 F.3d 1194, 1213 (10th Cir. 2015).

I referred to these principles in my oral ruling on the motion to exclude the testimony of ADT's alarm expert Louis Fiore. At the April 12, 2018 hearing, I denied the motion as to Fiore's qualifications but explained that, to the extent Fiori's report recited ADT's version of the facts, as if from firsthand knowledge, such evidence would be impermissible. [DE 114 at 26-27.] Throughout Zwirn's lengthy report are statements of fact that apparently have been communicated to him to support his expert opinions. The "Background" section of the report provides a description of Ms. Gonzalez's

7

acquisition of the ADT alarm system and the horrific events of June 9, 2013, including how the alarm system functioned (or failed to function). [DE 125-2 at 11-14.] None of these facts is appropriately testified to directly by Zwirn. If fact witnesses and exhibits support such facts, Zwirn may offer appropriate expert opinions based on those facts, but his testimony should "only incidentally disclose" the facts relied on as necessary to explain his opinions. *Pablo*, 696 F.3d at 1288. Calling this "Background" might suggest an understanding that these facts are set out only to explain what factual scenario Zwirn assumed for purposes of offering expert opinions. But the later "Preliminary Investigative Findings and Opinions to Date" suggests that Zwirn (or plaintiffs) do not understand the expert's limits in this way. [*Id*. at 26-33.]

For example, this later section includes Zwirn's assertion that "Ms. Maria Gonzalez decided to have an alarm system installed in her home because she knew it was in a bad neighborhood and she had prior break-ins at her home." [*Id*. at 26-27.] This is a statement of fact based on hearsay, not an expert opinion. The same is true of Zwirn's statements that ADT's sales representative told Ms. Gonzalez she needed only one motion detector, that he offered Ms. Gonzalez "only one limited type of burglar alarm system," and "instructed Ms. Gonzalez in how to operate her new alarm system." [*Id*. at 27.] At trial, testimony to that effect will have to come from Ms. Gonzalez and not as hearsay from Zwirn. To the extent that Zwirn conducted his own examination of the ADT system installed in the Gonzalez residence, he may offer fact testimony about the system and its installation. But Zwirn's report contains few if any factual assertions

8

based on the site investigation plaintiffs claim he conducted. [DE 132 at 9.] A third section of the report is a "Summary of Expert Opinions" consisting of 47 paragraphs over 13 pages. [*Id*. at 14-26.] Throughout this section as well, many of Zwirn's statements exceed the bounds of expert opinion. For example, it is a statement of fact, and not an expert opinion, that "[t]here was no home security system option which was offered to Ms. Gonzalez by 'Eric' from ADT that was declined by Ms. Gonzalez as a cost consideration." [*Id*. at 19, ¶22.]

The "Summary of Expert Opinions" is also replete with another type of objectionable statement. Zwirn's report contains (and repeats more than a dozen times) his conclusions that ADT "falsely misrepresented a multitude of material facts" [DE 125-2 at 14, ¶3] and "deceptively and recklessly concealed material facts" [*Id*. at 14, ¶4]. I do not question that an alarm expert could testify that particular statements by ADT about an alarm system were incorrect or false. But Zwirn's characterizations – involving the legal concepts of deception, misrepresentation and fraud – go further than mere error. Each of these terms contains an element of intent to mislead.

For that reason, ADT challenges these statements as legal conclusions. [*See, e.g.*, DE 125 at 11.] A legal conclusion masquerading as expert opinion is inadmissible. *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012) (noting that Rules 702 and 704 prohibit experts from offering legal opinions about issues central to the outcome of a case). Whether deceptive intent is a legal or factual conclusion, I think there's a more fundamental reason for excluding such testimony from Zwirn, namely that his report

neglects to identify a reliable basis for concluding that any misstatements by ADT were intentional. In the absence of any explanation of facts and reasoning supporting a conclusion that erroneous advice (or lack of advice) by ADT was deliberate, Zwirn's conclusions are not admissible.

ADT also objects to Zwirn's several conclusions that ADT's failures were the cause of the Gonzalez plaintiffs' injuries. One such statement opines that ADT's "fraudulent conduct and false representations in this matter was a cause of the damages" suffered by the Gonzalezes [*Id*. at 16, ¶9.] ADT articulates its objection as two-fold, that conclusions about causation usurp the role of the jury and constitute a legal conclusion. [*See*, *e.g.*, DE 125 at 11.] The first of these arguments is a non-starter. To say that an expert witness's conclusion invades the province of the jury "has been no objection since the Federal Rules of Evidence were adopted in 1975." *United States v. Davenport*, 149 Fed.Appx. 536, 538 (7th Cir. 2005). In support of this pronouncement *Davenport* cites Fed.R.Evid. 704(a): "an opinion is not objectionable just because it embraces an ultimate issue."

ADT cites no authority for its summary assertion that opinions on causation are legal opinions. The notion that expert witnesses can't render opinions about causation is without merit. To the contrary, in some contexts (such as medical causation under Indiana law) an expert on causation is *required* for a viable claim. *See, e.g., Robinson v. Davol, Inc.*, 913 F.3d 690, 695 (7th Cir. 2019). Because causation is "'normally a matter for the jury,'" it is not a legal conclusion that is beyond the permissible scope of an expert's

testimony. *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015), quoting *Collins v. Am. Optometric Ass'n*, 693 F.2d 636, 649 (7th Cir. 1982). Although I am not persuaded to wholesale bar any testimony from Zwirn as to causation, for the reasons I explained earlier he will not be permitted to offer causation testimony (like the statements quoted above) contaminated with inadmissible conclusions about fraudulent or intentionally false representations by ADT.

The nearly overwhelming quantity of improper material in Zwirn's report comes dangerously close to my excluding him as a witness. But ultimately, as with ADT's alarm expert, I am persuaded that expert testimony should be allowed if appropriately limited to the bounds of expert opinion. At trial, Zwirn will not be permitted to offer testimony declaring hearsay facts or conclusions for which he identifies no factual basis. But Zwirn's security system expertise could support opinions about how the system was (or should have been) designed and installed, and why it functioned (or failed to function) the way it did. Zwirn's opinions about the adequacy of how Maria Gonzalez was educated on the system's use are also within his expertise. A factual foundation for such opinions – for example, evidence of the nature of the system installed and its performance during the home invasion – must be built on appropriate "occurrence" witnesses with firsthand knowledge. If Zwirn lacks firsthand knowledge, he may only incidentally disclose those facts when explaining the rationale for his opinions.

I agree with the Gonzalezes' observation that their claims present issues including "how alarm systems are designed and intended to work, the standards for

11

safely designing and installing alarm systems, [and] the best practices in the alarm industry," all of which are matters beyond the knowledge of the average person and potentially the subject of admissible expert testimony. [DE 132 at 11.] ADT also agrees. [DE 134 at 7.] Admissible opinions on these subjects are included in Zwirn's report. One example is Zwirn's opinion about ADT's failure to ensure that the first floor motion detector was fully functional and armed when needed, despite ADT's awareness of the foreseeability of criminal access into the home through first floor windows. [DE 125-2 at 20.] Another is Zwirn's opinion that "ADT had a duty to thoroughly discuss with Ms. Gonzalez her motivation for wanting a security system, her unique security concerns, and the level of protection she needed and desired," including consideration of certain factors enumerated by Zwirn. [*Id*. at 21.] Also that ADT "had a duty to discuss with Ms. Gonzalez the different internal system programming options that were available and built into the system." [*Id*. at 23.] These are a few of a number of opinions that ADT has not shown should be excluded.

Absent the inadmissible characterization of deception on ADT's part, Zwirn could admissibly offer testimony concerning ADT's failure to advise Ms. Gonzalez of the availability of additional features such as different types of control panels, system programming options, and hardwired versus wireless intrusion detection. [DE 125-2 at 15.] Another example of admissible expert testimony, to which ADT has no objection [DE 125 at 24], addresses the manner of functioning of the Gonzalezes' system:

12

> Simultaneously, since the motion detector was wireless, there were no walk light indicator lights on it to determine its functionality, which by manufactured design was in order to save battery life, and there was also a three (3) minute shutdown feature, which also by manufactured design, was intended to extend the units internal dry cell battery life as well, once this sensor detected movement in its field of view.

[DE 125-2 at 31.] This kind of testimony shows an application of technical expertise to help the trier of fact understand the fact evidence otherwise admitted.

Zwirn will be permitted to testify to background facts of which he lacks firsthand knowledge only as incidentally necessary to explain his opinions. Zwirn cannot testify that ADT acted deceptively, deceitfully or fraudulently. Subject to these limitations, Zwirn can offer relevant expert testimony previously disclosed on the design, installation and function of alarm systems, including the Gonzalezes' ADT system.

**Conclusion**

The expert testimony of Sean Conrin and Jeffrey Zwirn will not be excluded in the entirety, but their testimony will be admitted only to the extent that it stays within the boundaries expressed in this opinion.

**ACCORDINGLY:**

Defendant ADT LLC's Motion in Limine to Exclude the Opinions and Testimony of Expert Sean Conrin, M.D. [DE 124] is DENIED IN PART, with respect to his review of the plaintiffs' mental health treatment and diagnoses after the home invasion, as well as general explanations of post-traumatic stress disorder and major depressive disorder. The motion is GRANTED IN PART, with respect to opinions concerning the plaintiffs'

on-going or future mental health conditions and need for treatment.

Defendant ADT LLC's Motion in Limine to Exclude the Opinions and Testimony of Expert Jeffrey D. Zwirn [DE 125] is GRANTED IN PART as to unsupported conclusions about ADT having deceptive intent and as to the hearsay assertion of facts other than as incidental to explanations of proper expert opinion. The motion is otherwise DENIED IN PART and Zwirn will be permitted to testify to previously disclosed opinions as an expert on alarm systems.

**ENTERED this 20th day of February , 2019.**

                                              **/s/ Philip P. Simon**
                                              **JUDGE**
                                              **UNITED STATES DISTRICT COURT**